```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF ALABAMA
                   SOUTHERN DIVISION
```

```
BRENDA L. SHAW,                    *
                                   *
     Plaintiff,                    *
                                   *
vs.                                *   Civil Action No. 05-00365-CB-B
                                   *
JO ANNE B. BARNHART,               *
Commissioner of                    *
Social Security,                   *
                                   *
     Defendant.                    *
```

## REPORT AND RECOMMENDATION

Plaintiff Brenda L. Shaw ("Plaintiff") brings this action seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401 et seq. and 1381 et seq. This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was waived. (Docs. 13 & 14). Upon consideration of the administrative record and memoranda of the parties, it is recommended that the decision of the Commissioner be **REVERSED** and **REMANDED.**

I.   Procedural History

Plaintiff protectively filed an application for period of disability and disability insurance benefits on September 7, 2000, alleging that she became disabled on April 9, 1998 due to breathing

problems, deafness, emphysema, asthma and back problems.  (Tr. 17, 73-76, 88, 97, 282-284, 320, 336).  Plaintiff's applications were denied by an August 22, 2000 ALJ decision (Id. at 32-47), and as a result, her alleged onset date was amended to August 23, 2000.[1] (Id. at 17, 55-61, 285-290, 320).  Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ") on May 25, 2001. (Id. at 62).   On September 24, 2003, ALJ Stuart A. Wein ("ALJ Wein") conducted an administrative hearing which was attended by Plaintiff, her representative, a witness for Plaintiff, and a vocational expert ("VE").  (Id. at 317-345).  On October 24, 2003, ALJ Wein issued an unfavorable decision (Id. at 14-23) in which he found that Plaintiff has the severe impairments of borderline intellectual functioning, hearing loss, COPD and osteoarthritis, but that her impairments do not meet or equal a Listings impairment at 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 20, 22).  He further found that Plaintiff retains the residual functional capacity ("RFC") for light work with moderate limitations in her ability to understand and carry out detailed instructions, to

---

[1]Plaintiff previously filed applications for period of disability, disability insurance benefits and supplemental security income benefits (Id. at 97) on July 1, 1999, but those applications were denied initially and upon reconsideration on September 16, 1999 and October 28, 1999.  After a hearing on March 22, 2000 (Id. at 291-316), ALJ Ricardo M. Ryan rendered an unfavorable decision on August 22, 2000. (Id. at 32-51).  In adjudicating Plaintiff's current application for benefits, the ALJ did not reopen the previous decision and Plaintiff has not raised the issue before this Court. Accordingly, the finding that Plaintiff was not disabled as of August 22, 2000 is a fact for purposes of the present action.  Additionally, a review of the September 2003 hearing reveals that Plaintiff's counsel expressly requested that the alleged onset date be amended to August 23, 2000, and the ALJ granted said request.  (Tr. 320).

2

perform work requiring fine bilateral hearing or work involving environmental pollutants or hazardous machinery, and that she could return to her past relevant work ("PRW") as a cashier and pricer/sorter. (Id. at 21-22). Plaintiff's request for review was denied by the Appeals Council ("AC") on April 26, 2003; thus, the ALJ's decision became the final decision of the Commissioner. (Id. at 4-6, 11-13). The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. Background Facts

Plaintiff was born on November 28, 1962, and was 40 years old at the time of the administrative hearing. (Tr. 18, 322-323). Plaintiff repeated the 2nd grade, was in special education classes, and left school after the 6th grade because she was pregnant. (Id. at 18, 94, 323, 335, 342). At the September 24, 2003 hearing, Plaintiff testified that she is able to do simple reading, writing and math, can pay her bills, and has a driver's license (but took her five times to pass it). (Id. at 323-324). She reported that her daily activities include reading the newspaper, bible or books about two hours per day; talking on the telephone daily; readying her children for school; washing clothes; house cleaning; and limited grocery shopping and cooking. (Id. at 333). She does not perform any outdoor chores or yard work due to her asthma and breathing difficulties. (Id. at 102-103, 332-334).

Plaintiff has PRW as a cashier and clothes sorter/pricer (tagger). (Id. at 324-325). Her last job was from 1992-1998, working full time as a cashier and clothes pricer/sorter. (Tr. 324-326). According to Plaintiff, she was moved from the cashier position to the clothes pricer/sorter position because she could not hear well, and she eventually quit because the fumes from the clothing fibers caused her asthma to flare up, and she was having to go to the doctor on lunch breaks for breathing treatments. (Id. at 325). Plaintiff testified that she attempted to find other employment at various retail outlets; however, she has not had any success. (Id. at 327).

Plaintiff testified that the main medical problem which prevents her from working is her "breathing;" that she has asthma, which is aggravated by the weather and outdoors, so she tries to stay inside. (Id. at 332-333, 327-329). Her medications include Theo-24, Zyrtec, Zoloft, Vanceril inhaler (3 times per day), Serevent inhaler (2 puffs every 12 hours), Albuterol inhaler (2 puffs per day), Albuterol sulfate (3-4 times per day) and Eggic Plus. (Id. at 116, 328). Additionally, Plaintiff testified that she has a hearing impairment which prevents her from being able to work. (Id. at 330-332, 336). According to Plaintiff, she is totally deaf in her left ear, and has only 10 percent hearing in

her right ear.[2]   (Tr. 332).

**III. Issues on Appeal**

A.   Whether the ALJ erred by failing to find that Plaintiff meets Listing 12.05C?

B.   Whether the ALJ erred by finding that Plaintiff can return to her past relevant work?

C.   Whether the ALJ erred by failing to address Plaintiff's mental limitations in accordance with 20 C.F.R. §§ 404.1520a and 416.920a?

**IV. Analysis**

   **A.   Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  This Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence, and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[3]  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth

---

[2] Plaintiff's mother testified that she has no hearing, and that while they have checked into obtaining hearing aids, the doctor told them it would not do any good as she is totally deaf in one ear and has only 10 percent in the other, and a hearing aid may create a fungus in her ear and destroy what is left of her hearing; she added that they have no money to buy a hearing aid.  (Id. at 338-339, 343-344).

[3] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. 1999).

**B.   Discussion**

An individual who applies for Social Security disability benefits must prove her disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability.  20 C.F.R. §§ 404.1520, 416.920.[4]  See, e.g., Crayton v. Callahan,

---

[4] The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at

120 F.3d 1217, 1219 (11th Cir. 1997).

### 1. **Whether the ALJ erred by failing to find that Plaintiff meets Listing 12.05C?**

Plaintiff claims that the ALJ erred by failing to find that she meets Listing 12.05C because: 1) he did not mention, much less consider, the Listing in his decision; 2) Dr. McCleary's March 31, 2001 valid IQ test scores (Verbal IQ of 66, Performance IQ of 64 and Full Scale IQ of 62) establish that she meets the first prong of Listing 12.05C; and 3) her severe physical impairments of hearing loss, COPD and osteoarthritis constitute additional and significant work related physical limitations of function to establish that she meets the second prong of Listing 12.05C. Based upon a careful review of the record, the undersigned finds that substantial evidence does not support the ALJ's determination that Plaintiff does not meet Listing 12.05C.

---

the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

Listing 12.05C falls under § 12.00 MENTAL DISORDERS and provides that:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; _i.e._, the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied ···· C. **A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function**.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (emphasis added).[5] A claimant meets the criteria for presumptive disability under Listing 12.05C when she presents a valid IQ score of 60-70, an onset of impairment before age 22 _and_ evidence of an additional and significant mental or physical impairment (_i.e._, having more than "minimal effect" on the claimant's ability to perform basic work activities).  See, e.g., Edwards by Edwards v. Heckler, 755 F.2d 1513, 1516 (11th Cir. 1985).[6]  Claimant bears this burden.  Id.  In order to be considered disabling, an impairment must be accompanied by work-related functional limitations.  See, e.g., Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).  In the Eleventh Circuit, it is presumed that a person's I.Q. remains fairly

---

[5] Cobb v. Barnhart, 296 F. Supp. 2d 1295 (N.D. Ala. 2003); Davis v. Shalala, 985 F.2d 531 (11th Cir. 1993)(quoting Listing 12.05C).

[6] See also Wilkinson on behalf of Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987); Barron v. Sullivan, 924 F.2d 227, 229 (11th Cir. 1991); Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Berryman v. Massanari, 170 F. Supp. 2d 1180, 1186-1187 (N.D. Ala. 2001); Cobb, 296 F. Supp. at 1296-1297.

constant throughout her life, and a valid I.Q. test score meeting the Listing criteria creates a rebuttable presumption that the condition manifested itself before age twenty-two.  See, e.g., Hodges v. Barnhart, 276 F.3d. 1265, 1268-1269 (11th Cir. 2001).  A valid I.Q. test score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities.  See, e.g., Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992).

In his decision, the ALJ stated as follows with regard to whether Plaintiff's impairments meet or equal a Listings impairment:

> A consultative examination was performed by Gerald E. McCleary, Ph.D., on March 31, 2001. The claimant reported to Dr. McCleary that her view of the future was hopeless and her greatest fear was her breathing problems. The results of the Weschler Adult Intelligence Scale - III resulted in a Verbal IQ of 66, a Performance IQ of 64, and a Full Scale IQ of 62. This level of functioning placed her in the range of mild mental retardation. She did not, however, report or exhibit deficits in at least two domains of adaptive living skills, so she failed to meet the diagnostic criteria for a diagnosis of mild mental retardation. She appeared to have a normal life style. It was Dr. McCleary's diagnostic impression that the claimant had Borderline Intellectual Functioning and history of depression, NOS. She was taking an antidepressant and being seen at the Mobile Mental Health Center. These interventions appeared to be effective and her depression was controlled at this time [ ] . . . .
> * * *
> . . . . the claimant has been treated at the Franklin Memorial Primary Health Center since November, 1998 for . . . depression . . . Dr. Carroll prescribed [her] . . . . a variety of medications. On January 31, 2002, Dr. Carroll stated the claimant appeared to be improving and not getting worse . . . .

> The claimant has received intermittent treatment from Mobile Mental Health for major depression. When seen on January 11, 2002, her mood and affect were normal. She had complaints of problems with her children but she did not wish to see the doctor. She was last seen on July 10, 2003 with complaints of sleep disturbance, depressed mood and tearfulness. She complained of stress due to her inability to find work and continued to express concerns with her hearing problems, and with her children who were having trouble with the law [] . . . .
>
> The undersigned Administrative Law Judge concludes the medical evidence indicates that the claimant has borderline intellectual functioning, hearing loss, COPD and osteoarthritis, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. No treating or examining physician has set forth findings equivalent in severity to the criteria of any listed impairment.
>
> * * *
>
> . . . . Dr. McCleary found the claimant did not exhibit deficits in at least two domains of adaptive living skills, and she failed to meet the diagnostic criteria for a diagnosis of mild mental retardation. She appeared to have a normal life style [] . . . . According to her testimony she was able to do household chores, cook, read, pay her own bills and search for jobs . . . . [] For the foregoing reasons, the claimant's combined impairments are found to not rise to the level of severity to meet or equal a listing.
>
> * * *
>
> Based upon a thorough review of the entire record . . . . the claimant retains the residual functional capacity for light work, with moderate limitations in the ability to understand and carry out detailed instructions . . . . the claimant's mental depressive disorder is not of a severity to preclude the ability to work. GAF scores . . . reflect slight deficits of functioning . . . . []

(Tr. 20-21 (citations omitted)).

In his decision, the ALJ wholly failed to make any reference whatsoever to Listing 12.05C, and it is not clear from the decision that he considered Plaintiff's impairments in light of this

10

Listing.  His discussion at step three is very general, and he perfunctorily finds, based on Dr. McCleary's evaluation (Tr. 149-151), that Plaintiff did not exhibit deficits in at least two domains of adaptive living skills, that she failed to meet the diagnostic criteria for a diagnosis of mild mental retardation, and that she lead a normal life.  From the ALJ's decision, it is simply not clear whether he concluded that Plaintiff's I.Q. scores, which on their face met the first prong of 12.05C, were invalid, or if, and on what basis, he concluded that Plaintiff had not manifested deficits in adaptive functioning behavior before age 22.  This is particularly problematic where the record reflects evidence that Plaintiff repeated the second grade, was in special education classes, left school after the sixth grade, and has an abbreviated employment history involving unskilled labor.  See supra.  It may well be that Plaintiff will have difficulty proving that she meets Listing 12.05C; however, the undersigned cannot, at this juncture, find that the ALJ's decision is supported by substantial evidence since he did not address the evidence in light of the relevant listing, namely 12.05C.  To find otherwise would require the undersigned to speculate and surmise about the rationale underlying the ALJ's decision, and that is not the Court's function.  See, e.g., Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002) (providing that regardless of whether there was enough evidence in the record to support the ALJ's decision, principles of

administrative law require ALJ to rationally articulate the grounds for the decision and confines the court's review to the reasons supplied by the ALJ); Deal v. Barnhart, 2003 U.S. Dist. LEXIS 17432 (N.D. Ill. 2003) (stating that the court was unwilling to find that the ALJ's decision was supported by substantial evidence when he did not address the evidence in light of the relevant listing); Ramos v. Barnhart, 2003 U.S. Dist. LEXIS 7463 (S.D.N.Y.) (remanding the case where the ALJ failed to explain the applicability of the critical regulation relating to plaintiff's claim); See also Fitts v. Massanari, 2001 WL 530475 (S.D. Ala. May 7, 2001) (holding that the ALJ erred by failing to mention Listing 12.05C in his decision and to analyze the evidence in light of the specific requirements of the Listing); Chunn v. Barnhart, 397 F.3d 667, 671-672 (8th Cir. 2005) (holding that the ALJ's decision, which did not even mention Listing 12.05C or otherwise indicate that he considered it relevant to plaintiff's claim, was not based on substantial evidence). Accordingly, this case should be remanded for further consideration and findings with respect to whether Plaintiff meets the requirements for Listing 12.05C in light of the record evidence.

Upon remand, the ALJ should also reexamine the issue of whether Plaintiff can return to her past relevant work. During the administrative hearing, the Vocational Expert indicated that if

12

Plaintiff is unable to perform work requiring fine bilateral hearing, she would be precluded from performing the cashier position; and that if she is restricted from moderate exposure to fumes, odors, dust, gases, poor ventilation, she would be precluded from the sorter job as well. (Tr. 342-343).  The Vocational Expert further seemed to opine that if those jobs were eliminated, given Plaintiff's age, education and borderline intellectual functioning, there would not be any jobs that she could perform.  (Id. at 342). Although the ALJ concluded that Plaintiff did not have the ability to perform work requiring fine bilateral hearing, he nevertheless found that Plaintiff could return to cashier work.  The ALJ also determined that Plaintiff could not work around "environmental pollutants;" however, it is not clear if by this finding, he determined that she was restricted from moderate exposure to fumes, odors, dust, gases, and poor ventilation.  If so, the Vocational Expert's testimony would appear to preclude her from the sorter position.   Thus, upon remand, the ALJ should also clarify Plaintiff's residual functional limitations so that the Court can conduct a meaningful review of the ALJ's findings in light of the record evidence.

**V.    Conclusion**

For the reasons set forth, and upon consideration of the

administrative record and memoranda of the parties, it is recommended that the decision of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits and supplemental security income, be **REVERSED** and **REMANDED** for further proceedings consistent with this recommendation.

The attached sheet contains important information regarding objections to this <u>report and recommendation.</u>

**DONE** this the **13th** day of **September, 2006.**

<u>      /s/ Sonja F. Bivins      </u>
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.   **Objection**. Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1))c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Opposing party's response to the objection.** Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                              **/s/SONJA F. BIVINS**
                                              **UNITED STATES MAGISTRATE JUDGE**